# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**BRUCE H. BOKONY and**　　　　　　　　　　　　**PLAINTIFFS**
**BRANDON H. BOKONY**

**v.**　　　　　　　　　**No. 4:19-cv-608-DPM**

**UNITED STATES DEPARTMENT OF**
**DEFENSE, Secretary of Defense, Mark T.**
**Esper;  UNITED STATES DEPARTMENT OF**
**THE NAVY, Secretary of the Department of**
**the Navy, Richard V. Spencer;**
**JEFF W. HUGHES, Commander Navy**
**Personnel Command, Rear Admiral;  and**
**DOES, United States Navy Personnel**
**Command**　　　　　　　　　　　　　　　　　**DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This case is about benefits for a retired veteran's disabled son. Bruce Bokony retired from the United States Navy.  He earned the right to retirement pay, plus various benefits for himself and his family. Bruce and his wife have a son, Brandon, who was born prematurely. After he turned eighteen, the Social Security Administration determined that Brandon is completely disabled.  He is now in his thirties.  He has always lived with his parents.  When Bruce retired in 2004, he received information from the Navy about all his retirement benefits.  That information told Bruce, among other things, that his eligible dependents would be entitled to medical benefits, and that an

unmarried adult child who couldn't support himself because of a pre-existing physical or mental disability could qualify as a dependent. Several years later, in September 2012, Bruce turned sixty, which triggered his retirement benefits. As directed in the information the Navy had sent Bruce, he and Brandon went to the Little Rock Air Force Base to get ID cards, so their benefits could start flowing. Bruce recalls being asked only one question about Brandon's self-support: where does Brandon reside? Brandon received an ID card, a DD Form 1173 — United States Uniformed Services Identification and Privilege Card. By the expiration date, the card reflected "INDEF." *Doc. 1 at 7.* Brandon received various benefits, including health insurance, for almost five years. During that period, Bruce began drawing social security, too. Brandon became eligible for child's insurance benefits, 42 U.S.C. § 402(d), and likewise began receiving them.

Difficulties began in August 2017. The Navy — the Court will use this shorthand for all the Department of Defense defendants — notified Bruce that Brandon's financial dependency on him had to be recertified every four years. It was time for this quadrennial review. The point of this review was to confirm that Bruce was providing more than half of Brandon's support. During the next two years, there were more forms, letters, and much back-and-forth between Bruce and the Navy. The conclusion: Bruce was not providing more than half of Brandon's support. Brandon's health insurance was terminated in January 2018.

Bruce turned in Brandon's ID card in March of that year. During the back-and-forth, the Navy informed Bruce that a review had determined that no proper certification of Brandon's dependency had ever been done. *Doc. 1 at 14.* That discovery had kicked off the recertification process and ensuing difficulties. The Navy's final decision was without prejudice to reapplication based on additional information. *Doc. 39 at 4.*

Bruce responded with this case, seeking restoration of Brandon's benefits. He challenges the Navy's decision that Brandon doesn't qualify as his dependent for purposes of the controlling statute, 10 U.S.C. § 1072(2)(D)(iii), and he challenges how the Navy made that decision, both as a matter of due process and administrative procedures. The Navy answered. It acknowledged this Court's subject matter jurisdiction. *Doc. 23 at 1.* On the merits, the Navy defended its decision, saying nothing unconstitutional or unreasonable had occurred. It also reserved the right to plead other affirmative defenses that might appear as the case developed. *Doc. 23 at 12.* The parties filed various motions. After filing the administrative record, the Navy moved for remand. It requested the opportunity to do two things: reconsider on the merits, with more information if Bruce wanted to submit some; and respond to Bruce's detailed arguments from various statutes and regulations. The Navy's original decision was a bit cryptic, and Bruce's arguments were complicated. So, over Bruce's objection,

-3-

the Court remanded the case, retained jurisdiction, and set a deadline for the Navy's decision on remand. *Doc. 48*.

Bruce chose not to submit additional information on remand. The Navy responded with a memorandum for the record, which explained the administrative process, plus the facts about Bruce and Brandon, in helpful detail. The Navy has clarified that, on the current record, Brandon's monthly social security child's insurance benefits are $39.11 more than one-half of his monthly expenses. Brandon, therefore, doesn't qualify as Bruce's dependent under 10 U.S.C. § 1072(2)(D)(iii). The Navy's memorandum did not, however, address all of Bruce's contentions about the statutory scheme or regulations involved. The Court requested another round of briefs. They're pointed and illuminating. And the Navy's brief engages Bruce's legal arguments.

The Navy opens with a new point: no subject matter jurisdiction. This statute provides that a "determination of dependency by an administering Secretary under this chapter is conclusive. However, the administering Secretary may change a determination because of new evidence or for other good cause. The Secretary's determination may not be reviewed in any court or by the Comptroller General, unless there has been fraud or gross negligence." 10 U.S.C. § 1084. A court's power to act is always an open question, a matter that cannot be waived or forfeited. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). The Navy's contrary position earlier in the case therefore doesn't make any legal

-4-

difference. Administrative decisions are presumptively reviewable by a court, *Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984), but Congress can eliminate jurisdiction by speaking in plain terms, *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 778 (1985). It did so here.

The Court is unpersuaded by Bruce's argument that the statute removes jurisdiction only when the Navy determines that a child is dependent. On that reading, the statute would have little work to do—the Secretary and the parent would agree about the child's dependency, and no one would be seeking redress in court. The better reading is that the Secretary's decision—pro or con—on dependency is always open for reconsideration by the Secretary but may not be reviewed by a court absent fraud or gross negligence. *Wheeler v. United States*, 11 F.3d 156, 158–59 (Fed. Cir. 1993). Bruce does not allege either one. This Court, therefore, has no power to review the Navy's ultimate determination that Brandon is not Bruce's dependent. That is not the end of the case, though.

Notwithstanding a clear jurisdiction-stripping provision like 10 U.S.C. § 1084, this Court retains authority to address constitutional claims. *Lindahl*, 470 U.S. at 791; *see also Hata v. United States*, 23 F.3d 230, 233 (9th Cir. 1994). And the Bokonys plead and argue that the Navy violated the Fifth Amendment's Due Process Clause in terminating Brandon's benefits. "The essential requirements of due

-5-

process" are "notice and an opportunity to respond." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). The Navy notified the Bokonys that it was reviewing Brandon's eligibility. It gave the family many opportunities to submit information and explain Brandon's expenses, his income, and how Mr. and Ms. Bokony supported their son. Many of the applicable Navy policies and manuals are publicly available. The Defense Finance and Accounting Service Instruction—which the Navy used to calculate whether Bruce provides more than half of Brandon's support—was a part of the administrative record. Apparently it was not available to the public and had not been provided to the Bokonys during the back-and-forth. On remand, however, the family had the opportunity to submit more information for reconsideration in light of this guidance document and in general. In sum, the Navy didn't violate the Bokonys' due process rights because it notified them, and gave them many opportunities to be heard, before making a final decision about Brandon's benefits.

As to the bottom line—is Brandon Bruce's dependent?—the Navy's decision is beyond the Court's reach. As to how the Navy decided—its method—the Court has subject matter jurisdiction to evaluate alleged errors of law and procedure. Judicial "review is available to determine whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative

determination." *Lindahl*, 470 U.S. at 791 (quotation omitted). In this case, there's overlap between the Bokonys' constitutional claims and their other claims about legal error, arbitrariness, and unreasonableness in the administrative process. The parties argue the issues in terms of the Administrative Procedure Act. And the Court will address the Bokonys' claims about the particulars of the Navy's method of evaluating dependency in those terms.

The Bokonys' contend that the Navy acted unfairly and misconstrued the governing statute in making its decision. Brandon got what the statute described as a "permanent" ID card, 10 U.S.C. § 1060b(a), which showed "INDEF" as the expiration date, *Doc. 1 at 7*, and then the Navy took it away. The Navy's actions, the family argues, create an estoppel. This argument fails for two reasons. First, in general estoppel is not available against the federal government. *Green v. United States Department of Labor*, 775 F.2d 964, 969–70 (8th Cir. 1985). Second, the statute leaves the door ajar for reconsideration. The "administering Secretary may change a determination because of new evidence or for other good cause." 10 U.S.C. § 1084. In these words, Congress left open the possibility that those found not dependent could try again and that those found dependent could lose that status. Whatever the facts about the Bokonys' support for Brandon, his expenses, and his income may have been when he got his ID card in 2012, the Navy's decision about dependency wasn't locked in forever.

-7-

It was always subject to the facts about family support.   10 U.S.C. § 1072(2)(D)(iii).  The Secretary's authority to revisit these determinations is also a sufficient answer to the Bokonys' contention that various internal guidance documents do not apply because they were issued after Brandon got his ID card.  The Court sees no legal error in all these matters.  5 U.S.C. § 706.

The statute defines a dependent as (among other things) an adult child who can't support himself because of a pre-majority physical or mental incapacity and who is "in fact dependent on the member or former member for over one-half of the child's support[.]"  10 U.S.C. § 1072(2)(D)(iii);  *see also* 32 C.F.R. §§ 161.13 & 199.3.  The Bokonys argue that 32 C.F.R. § 199.3's definition of a dependent actually eliminated the statute's more-than-half-support criterion, but an agency can't amend a statute in an implementing regulation.  *Baker v. United States*, 460 F.2d 827, 839 (8th Cir. 1972).  The phrase "one-half of the child's support" goes undefined in § 1072 and the attendant regulations.  It could mean several things.  Whether the Court defers to the Navy's interpretation of the statute, including this key phrase, "depends in significant part on the interpretive method used and the nature of the question at issue." *Barnhart v. Walton*, 535 U.S. 212, 222 (2002).

The Navy stumps for *Chevron* deference, arguing that Congress gave the Secretary of Defense rulemaking authority and that this Court should defer to its implementing regulations.  *Chevron, U.S.A., Inc. v.*

- 8 -

*Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).   The Bokonys respond that the Navy's DFAS Instruction is merely an internal directive, which doesn't have the force of law or warrant *Chevron* deference.  The Bokonys are correct.  But courts "may defer to an agency interpretation even when the agency does not exercise formal rule-making authority." *Velasquez v. Barr*, 979 F.3d 572, 576 (8th Cir. 2020).   Because it is informal guidance, the Navy's DFAS Instruction is entitled to some respect as the Court construes the statute. How much?   A measure determined by the power of the Navy's interpretation to persuade considering all the circumstances. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944); *United States v. Mead Corp.*, 533 U.S. 218, 234–35 (2001);   *Alaska Department of Environmental Conservation v. EPA*, 540 U.S. 461, 487 (2004).  The Court will therefore evaluate the Navy's method for determining whether Bruce provides more than half of Brandon's support, a method embodied in the informal DFAS Instruction, with *Skidmore* deference.

The Bokonys make several challenges to the Secretary's method of putting 10 U.S.C. § 1072(2)(D)(iii) into effect.  The Court will consider them in turn.

The Bokonys first dispute counting social security benefits toward Brandon's income.  But it is reasonable for the Navy to consider all of Brandon's income in determining Bruce's support, regardless of how other government agencies treat those benefits or how Brandon uses

them. The fact that Brandon is saving approximately half of his benefits against the day that his parents are no longer alive is prudent but not determinative.

The Bokonys challenge allocating one "share" to Brandon in calculating household expenses under the Family Unit Rule. But the Navy can differentiate incapacitated adults (receiving one share) from non-incapacitated adults (receiving two shares) in assessing household expenses under this Rule. Unmarried minor household members also receive only one share; these single-share allocations reflect a child's generally greater dependency on the military family member. That's reasonable, not arbitrary.

The Bokonys argue disparate treatment of realized medical costs between Department of Defense ID cardholders and non-Department of Defense ID cardholders. This is true but unremarkable: different treatment depending on whether one has an ID card is a theme running throughout the regulatory scheme. The issue with Brandon's medical costs was that Bruce failed to submit the necessary paperwork on several occasions. Plus, despite Bruce's contentions to the contrary, the Navy credited Brandon's claimed expenses related to personal insurance—even authorizing an amount more than the amount Bruce claimed. *Doc. 50-1 at 2.*

The Bokonys also assert the Navy's failure to follow the standards published on the its website—the Navy contradicted its public

- 10 -

materials by not accounting for the "actual" amount Bruce provided for Brandon's expenses and by nixing the cost of a nearby assisted living facility as a cost Brandon or a social agency would otherwise pay if his parents weren't personally providing his care. On the first point, the Navy's website specifies that concern is for the amount Bruce provides toward meeting Brandon's expenses, rather than Bruce's expenses or income. But nothing about this policy precludes the Navy from tempering the "actual" amount Bruce provides with other sources of income Brandon receives. On the second, the Navy's website indicates that Bruce's support for Brandon may include services he provides Brandon that would otherwise be paid for. The Navy's refusal to count the assisted living facility cost suggests it doesn't see this assisted living facility as a like-for-like substitution with Bruce's in-home care. The Court won't second guess that judgment call. In any event, Bruce wasn't prejudiced, especially given his numerous chances to correct deficiencies identified by the Navy.

Last, the Bokonys point out that the DFAS Instruction is not publicly available and they didn't see it until the Navy included it in the Administrative Record. That's true, and it weighs against the Navy. An agency, however, may offer its interpretation even during litigation, *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 203 (2011), and the DFAS Instruction came into being long before this dispute.

- 11 -

Giving the Navy due deference based on its experience in administering these statutory benefits and its reasoning, the Court doesn't see any error that goes to the heart of Brandon's dependency determination. *Lindahl*, 470 U.S. at 791. Perfection isn't the standard. The Navy's methods are reasoned and reasonable.

* * *

The Court lacks subject matter jurisdiction to review the Navy's decision that Brandon is not Bruce's dependent. And the Bokonys' constitutional and other challenges to the Navy's method of making these decisions fail.

So Ordered.

WPMarshall Jr.
D.P. Marshall Jr.
United States District Judge

30 November 2020